UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAQUAN UHARA TAYLOR,
    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,
    Defendant.

No. 3:17-cv-01436 (SRU)

## RULING ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

In this Social Security appeal, Jaquan Taylor moves to reverse the decision by the Social Security Administration ("SSA") denying his claim for disability insurance benefits. Mot. Rev., Doc. No. 20. The Commissioner of Social Security moves to affirm the decision. Mot. to Affirm, Doc. No. 21. Because the Administrative Law Judge ("ALJ") used an improper, heightened standard to evaluate the evidence regarding Listing 1.04A of 20 C.F.R. § 404.1520(b) (disorders of the spine) ("Listing 1.04A"), I deny the Commissioner's motion and grant Taylor's.

### I. Standard of Review

The SSA follows a five-step process to evaluate disability claims. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). First, the Commissioner determines whether the claimant currently engages in "substantial gainful activity." *Greek v. Colvin*, 802 F.3d 370, 373 n.2 (2d Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not working, the Commissioner determines whether the claimant has a "'severe' impairment," i.e., an impairment that limits his or her ability to do work-related activities (physical or mental). *Id.* (citing 20 C.F.R. §§ 404.1520(c), 404.1521). Third, if the claimant does not have a severe impairment, the Commissioner determines whether the impairment is considered "per se

disabling" under SSA regulations. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). If the impairment is not per se disabling, then, before proceeding to step four, the Commissioner determines the claimant's "residual functional capacity" based on "all the relevant medical and other evidence of record." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), (e), 404.1545(a)). "Residual functional capacity" is defined as "what the claimant can still do despite the limitations imposed by his [or her] impairment." *Id.* Fourth, the Commissioner decides whether the claimant's residual functional capacity allows him or her to return to "past relevant work." *Id.* (citing 20 C.F.R. §§ 404.1520(e), (f), 404.1560(b)). Fifth, if the claimant cannot perform past relevant work, the Commissioner determines, "based on the claimant's residual functional capacity," whether the claimant can do "other work existing in significant numbers in the national economy." *Id.* (citing 20 C.F.R. §§ 404.1520(g), 404.1560(b)). The process is "sequential," meaning that a petitioner will be judged disabled only if he or she satisfies all five criteria. *See id.*

The claimant bears the ultimate burden to prove that he or she was disabled "throughout the period for which benefits are sought," as well as the burden of proof in the first four steps of the inquiry. *Id.* at 374 (citing 20 C.F.R. § 404.1512(a)); *Selian*, 708 F.3d at 418. If the claimant passes the first four steps, however, there is a "limited burden shift" to the Commissioner at step five. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). At step five, the Commissioner need only show that "there is work in the national economy that the claimant can do; he [or she] need not provide additional evidence of the claimant's residual functional capacity." *Id.*

In reviewing a decision by the Commissioner, I conduct a "plenary review" of the administrative record but do not decide *de novo* whether a claimant is disabled. *Brault v. Soc.*

2

*Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam); *see Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam) ("[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."). I may reverse the Commissioner's decision "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek*, 802 F.3d at 374-75. The "substantial evidence" standard is "very deferential," but it requires "more than a mere scintilla." *Brault*, 683 F.3d at 447-48. Rather, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Greek*, 802 F.3d at 375. Unless the Commissioner relied on an incorrect interpretation of the law, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

## II. Facts

Jaquan Taylor filed applications for Social Security benefits and Supplemental Income benefits on December 2, 2013. ALJ Decision, R. at 24. In both applications Taylor alleged a disability onset date of October 5, 2011. However, on the record and through counsel at the ALJ hearing, Taylor amended the alleged disability onset date to March 6, 2012. *Id*. At the time of the alleged disability onset, Taylor was 29 years old. Taylor identified his disability as lower back pain, two pinched nerves, numbness in hands and feet, spasms, anxiety, and depression. Disability Determination Explanation, R. at 104. The SSA initially denied his claim on March 31, 2014, and again on reconsideration on September 4, 2014, finding that "[Taylor's] condition results in some limitations in [his] ability to perform work-related activities . . . [but his] condition is not severe enough to keep [him] from working." Disability Determination Explanation, R. at 155. Though there was insufficient vocational information to determine

whether Taylor could perform his past relevant work, the SSA noted that "[w]e have determined that [he] can adjust to other work." *Id*.

Taylor requested a hearing before an Administrative Law Judge ("ALJ") on October 20, 2014, and a hearing was held before ALJ Kim Griswold on February 23, 2016[1]. ALJ Decision, R. at 24. At the hearing, the ALJ questioned Taylor about his conditions, treatment history, and ability to perform daily working and living functions. Tr. of ALJ Hr'g, R. at 59–80.

Taylor responded that "[it was] easier for [him] to walk with [a] cane . . . [he couldn't] walk for a distance without the cane because there [was] pain in [his] groin." *Id*. at 64. Further, he "[laid] down on [his] bed almost all day . . . because of [his] pain," *id*. at 75, which he rated as an eight out of ten on a good day, and a ten out of ten on a bad day. *Id*. at 77. Taylor testified that he drove, but did not leave the house to shop for clothing or groceries. Tr. of ALJ Hr'g, R. at 77–78. He did not do any activities around his mother's house. *Id*. at 75.

The ALJ then heard testimony from Vocational Expert Erin Bailey, who testified that Taylor's prior work as a job development specialist was considered sedentary but, based on Taylor's testimony, was heavy as performed; his past work as a kitchen assistant was considered exertional level medium; and his past work as both a fast food worker and a cashier was considered exertional level light. *Id*. at 82.

The ALJ asked Bailey to consider a hypothetical individual of the same age, education (high school and one year of college, *id*. at 82), and experience as Taylor, who was limited to performing work with the following limitations: could lift and carry up to 20 pounds occasionally and 10 pounds frequently; could not perform overhead reaching with the bilateral upper extremities or lift from below the waist level with the bilateral upper extremities; could

---

[1] The initial hearing was scheduled for October 9, 2015, but was rescheduled when Taylor became unavailable. ALJ Decision, R. at 24.

occasionally stoop and climb ramps and stairs, but not ladders, ropes, or scaffolds; could occasionally crouch, crawl, kneel, and balance; could tolerate occasional exposure to extreme cold but no hazards or vibration such as moving machinery and unprotected heights; could understand, remember, and carry out simple, repetitive tasks throughout an ordinary work day and work week with normal breaks on a sustained basis; may use a cane to walk long distances outside the home over 100 feet; and may wear a back brace. Tr. of ALJ Hearing, R. at 82–83.

The ALJ asked Bailey whether that hypothetical individual could perform any of Taylor's prior jobs, and she testified that cashier was the only prior job that this hypothetical individual could perform. *Id*. at 83. The ALJ then asked Bailey whether there were other unskilled occupations that such an individual could perform. Bailey testified that the hypothetical individual could work: as a ticket seller, with approximately 40,000 jobs in the national economy; as a parking lot attendant, with approximately 40,000 jobs in the national economy; and as a price marker, with approximately 260,000 jobs in the national economy. *Id*. The ALJ pointed out that the DOT does not specifically address overhead reaching or reaching below the waist, but Bailey explained that based on her experience, the jobs that she mentioned did not require overhead reaching or lifting below the waist. *Id.* at 84.

The ALJ then changed the hypothetical, adding that the hypothetical individual: could lift and carry 10 pounds frequently; could stand and walk for two hours in an eight hour workday total; could sit for eight hours in an eight hour workday; and could not crouch, crawl, kneel, or climb ladders, ropes, and scaffolds with any regularity. *Id*. With these additional restrictions, Bailey testified that the hypothetical individual could perform work as: an information clerk, with approximately 35,000 jobs in the national economy; and a surveillance system monitor, with 20,000 jobs in the national economy. *Id*. at 84–85. The ALJ asked Bailey whether any

employer would allow the hypothetical individual to be absent from work at least twice a month on a regular basis, and whether any employer would allow the employee to be off task due to their condition for one hour a day—Bailey opined that no employer would tolerate that degree of absenteeism or distraction. Tr. of ALJ Hearing, R. at 85.

On May 4, 2016, the ALJ issued an opinion in which she found that Taylor was not "under a disability within the meaning of the Social Security Act from March 6, 2012, through the date of this decision." ALJ Decision, R. at 25. At the first step, the ALJ found that Taylor "ha[d] not engaged in substantial gainful activity since March 6, 2012, the beginning of the amended alleged onset date." *Id*. at 27. At the second step, the ALJ determined that Taylor's impairments of "degenerative disc disease with nerve root compression, episodic mood disorder not otherwise specified, and anxiety disorder" were severe impairments that "more than minimally limit[ed] [Taylor's] ability to perform basic work functions." *Id*.

At the third step, the ALJ determined that Taylor "[did] not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments." ALJ Decision, R. at 27. In making this finding, the ALJ considered whether Taylor's degenerative disc disease met or medically equaled listing section 1.04 (disorders of the spine). *Id*. The ALJ found that it did not, because "the record did not demonstrate compromise of a nerve root . . . or the spinal cord" consistent with the requirements of the listing. *Id*. at 27–28. The ALJ also determined that Taylor's mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06. *Id*. at 28. In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied, and she determined that they were not, because the mental impairments did not result in at least two "marked" limitations or one

6

"marked" limitation and "repeated" episodes of decompensation of extended duration as required by the listing. ALJ Decision, R. at 28.

The ALJ then assessed Taylor's residual functional capacity, and found that he could "perform less than a full range of sedentary work" with certain limitations. *Id*. at 29. The limitations were that Taylor: could lift and carry 10 pounds frequently; could not crouch, crawl, kneel, balance, or climb ladders, ropes, or scaffolds with any measurable regularity; could occasionally stoop and climb ramps and stairs; could not perform overhead reaching with the bilateral upper extremities; could not lift from below the waist with the bilateral upper extremities; could tolerate exposure to extreme cold; could not tolerate exposure to vibration and hazards, such as dangerous moving machinery and unprotected heights; could understand, remember, and carry out simple repetitive tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis; since September 2015, may use a cane to ambulate long distances outside the home over 100 feet; and since September 2015 may wear a back brace. *Id*.

The ALJ determined that Taylor's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." ALJ Decision, R. at 30. However, the ALJ decided that "[Taylor's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely supported." *Id*.

At the fourth step, the ALJ determined that Taylor could not perform his past relevant work as a job development specialist, social service aid, kitchen assistant, fast food worker, or cashier. *Id*. at 36. At the fifth step, the ALJ determined that, based on Taylor's age, education, work experience, and residual functional capacity, "there [were] jobs that exist[ed] in significant numbers in the national economy that [Taylor could] perform." *Id*. Because the ALJ found that Taylor was capable of making a successful adjustment to other work, she concluded that "a

7

finding of 'not disabled' [was] therefore appropriate" and denied Taylor's request for disability benefits. *Id*. at 37.

Taylor requested a review of the ALJ's decision by the SSA's Appeals Council on May 4, 2016. Notice of Appeals Council Action, R. at 1. The SSA Appeals Council "found no reason . . . to review either the dismissal action or the decision of the [ALJ]," and denied Taylor's request for review. *Id*. Taylor then filed a complaint before this court urging reversal of the Commissioner's decision on August 24, 2017. Compl., Doc. No. 1. Taylor filed a Motion to Reverse on March 19, 2018. Mot. Rev., Doc. No. 20. The Commissioner filed a Motion to Affirm on May 18, 2018. Mot. Affirm, Doc. No. 21.

**III.    Discussion**

On review, Taylor asserts that the Commissioner: used an incorrect legal standard in evaluating whether Taylor met the listing requirements for Listing 104.A at step 3, incorrectly evaluated the medical opinion evidence, and should have developed the record further. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 2–3. Specifically, he contends "substantial evidence does not support the ALJ's finding that [Taylor] failed to meet or equal [Listing 1.04A]", that the ALJ "improperly failed to develop the record" by failing "utilize the services of a medical expert", and that "[t]he ALJ imposed an incorrect legal standard(s) in determining wither [Taylor] met the listing", *id.* at 2–3; that "the ALJ violated the treating physician rule" by failing to "assign substantial weight" to Taylor's primary care doctor, *id.* at 3; and that the ALJ "improperly failed to develop the record, in that she failed to seek clarification from [Taylor's] treating physician" or "utilize a medical expert", *id.* at 3. The Commissioner responds that the ALJ's "findings are supported by substantial evidence and made by a correct application of legal principles," and should be affirmed. Mot. Affirm, Doc. No. 21, at 1.

8

For the reasons that follow, the case is remanded for further proceedings.[2]

A. Did the ALJ correctly evaluate Taylor's impairments under Listing 1.04A?

Taylor argues that the ALJ erred in determining that Taylor's impairments did not meet the requirements under Listing 1.04A because the ALJ used the incorrect standard to evaluate Taylor's motor loss, one of the requirements of the listing, and because Taylor's impairments occurred on a consistent basis rather than inconsistently. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 9–10. The Commissioner argues that Taylor did not meet his burden of showing that his impairments met or medically equaled Listing 1.04A and that the ALJ's findings are supported by substantial evidence. Mem. Supp. Mot. Affirm, Doc. No. 21-1, at 4.

To be considered disabled under Listing 1.04A, a plaintiff must demonstrate a spine disorder with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)". 20 C.F.R. Pt. 404, Subpt. P, App. 1.

For the reasons set forth below regarding the legal standard used by the ALJ to evaluate Taylor's impairments under Listing 1.04A, I agree with Taylor, and therefore remand the case regarding the ALJ's Listing 1.04A findings.

---

[2] Because the case is remanded at step three, I need not decide whether the ALJ 1) correctly evaluated the medical opinion evidence and 2) should have developed the record further, because these determinations will be reconsidered based on remand at step three.

1. *Did the ALJ apply the correct legal standard in evaluating whether Taylor met the requirements under Listing 1.04A?*

Taylor argues that "the ALJ has misstated the requirements of the Listing" and therefore applied a heightened legal standard to Taylor's claim. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 9. The Commissioner argues that because "there is a lack of consistent evidence with regard to the requirements of Listing 1.04A", ALJ Griswold's s misstatement of the requirement for motor loss does not change the outcome of the decision and is therefore not reversible error. Mem. Supp. Mot. Affirm, Doc. No. 21-1, at 5–6.

The Second Circuit has "remanded for further development of the evidence" on "numerous occasions" when "the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (internal citations and quotation omitted). Furthermore, "w]here there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." *Id.* (internal citation and quotation omitted). Although the plaintiff bears the burden of providing evidence demonstrating that he satisfies all listing requirements, *see Sullivan v. Zebley,* 493 U.S. 521, 531 (1990), the listing requirements for Section 1.04A do not include consistency as a requirement. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Taylor is correct that ALJ Griswold incorrectly stated that the listing required evidence of "motor loss (atrophy with associated muscle weakness)", ALJ Decision, R. at 30, rather than stating it correctly as "motor loss (atrophy with associated muscle weakness or muscle weakness)", 20 C.F.R. Pt. 404, Subpt. P, App. 1, thereby implying that motor loss could only be shown through atrophy, rather than including the possibility that muscle weakness could be shown through muscle weakness alone without a showing of atrophy.

The ALJ held that Taylor's symptoms did not meet the requirements for Listing 1.04A because "the record did not demonstrate compromise of a nerve root . . . or the spinal cord" consistent with the requirements of the listing. *Id.* at 27–28. The record is unclear, however, whether the ALJ actually applied the correct motor loss standard in making this determination and merely made a "typographical error", as the Commissioner argues, or whether the ALJ applied an incorrect legal standard, requiring atrophy in addition to muscle loss. *See* Mem. Supp. Mot. Affirm, Doc. No. 21-1, at 5.

In addition, rather than examining the record to determine whether Taylor's symptoms merely meet the requirements for Listing 1.04A, the ALJ appears to have opined on whether the symptoms *consistently* meet the listing requirements. In her decision, the ALJ states that "the record shows that [Taylor] sporadically exhibited the symptoms expected under 1.04. For example, [Taylor] exhibited negative left leg raising[.]" ALJ Decision, R. at 30 (referencing exhibits 3F/4; 27F). She also states that "[t]he record lacks consistent evidence that [Taylor] has motor loss verified by atrophy with associated muscle weakness and sensory or reflex loss." *Id.* Furthermore, she notes that Taylor did not take any pain medication for a period of six months or "avail himself of the fully physical therapy treatments as ordered." *Id.*

The Commissioner argues that the consistency standard is the correct legal standard, and that Taylor presented inconsistent evidence regarding the listing. Mem. Supp. Mot. Affirm, Doc. No. 21-1, at 5–6. Although the Commissioner cites two cases from district courts in New York as support for her proposition that consistency is necessary to find a disability under Listing 1.04A, *see id.* at 6, the Second Circuit has never held that such a consistency requirement exists and I am not bound by those district court decisions.[3] Moreover, the principal decision relied

---

[3] In *Beach v. Comm'r of Soc. Sec.*, the district court held that the requirements of Listing 1.04A must be met consistently. No. 7:13-CV-323, 2014 WL 859167, at *3 (N.D.N.Y. Mar. 5, 2014). In reaching that

upon by the Commissioner, *Alington v. Colvin*, 2017 WL 1370998 (N.D.N.Y. Apr. 17, 2017), stands for the proposition that sporadically meeting <u>some</u> "(but never all)" of a listing's requirements is not sufficient. That proposition authors the Commissioner no support here.

Because the ALJ appears to have used a consistency standard, which is a heightened and therefore improper standard, to evaluate Taylor's symptoms, remand is appropriate on the issue whether Taylor met the requirements of Listing 1.04A. *See Rosa*, 168 F.3d at 82–83.

Furthermore, because the ALJ's misstatement of the requirement for motor loss could change the outcome of the decision, and the other symptoms need not be consistently present, the case is remanded on the issue of the listing requirements as they pertain to the definition of motor loss as well.

### IV. Conclusion

For the reasons set forth above, I GRANT Taylor's Motion for Judgment on the Pleadings (Doc. No. 20) and DENY the Commissioner's Motion to Affirm (Doc. No. 21). The clerk shall remand the case for further proceedings and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 24th day of September 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

decision, the district court relied upon *Evans v. Astrue*, the other case cited by the Commissioner here, in which the district court affirming an ALJ's denial of benefits based on a lack of symptoms shown under Listing 1.04A stated "that the medical evidence did not support listing-level severity" but did not require a *consistent* showing of symptoms in the decision. No. 12-CV-6002, 2012 WL 6204219, at *3 (W.D.N.Y. Dec. 12, 2012).